# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 18-20025-03-DDC |
| ISAIAH LEWIS (03), | |
| Defendant. | |

## MEMORANDUM AND ORDER

Defendant Isaiah Lewis has filed a Motion for Severance and Separate Trial (Doc. 80) and, later, a Supplemental Motion to the same effect (Doc. 151). The government has filed a Response, both to the original motion (Doc. 140) and the supplemental one (Doc. 157). In between the two rounds of filings, the court conducted a hearing on the motion where the government presented evidence. *See* Doc. 145 (Clerk's Courtroom Minute Sheet) and Doc. 148 (Transcript of Hearing).

Concluding that none of Mr. Lewis's arguments can justify the relief he seeks in his motions, the court has decided to deny his motions. This Order explains why.

## Legal Standard

The legal principles governing Mr. Lewis's motions are well known. The court thus summarizes them briefly.

When weighing the merits of a motion for severance, "the court must weigh the prejudice to a particular defendant caused by the joinder against the important considerations of economy and expedition in judicial administration." *United States v. Mabry*, 809 F.2d 671, 681 (10th Cir.

1987), *overruled on other grounds*, *United States v. Matthews*, 485 U.S. 58 (1988)[1]; *see also United States v. Walton*, 552 F.2d 1354, 1362 (10th Cir. 1977), *cert. denied*, 431 U.S. 959 (1977). A severance request presents an issue of discretion, not one of right. The moving "defendant [thus] bears a heavy burden of demonstrating prejudice to his case." *Mabry*, 809 F.2d at 682 (citing *United States v. Parnell*, 581 F.2d 1374 (10th Cir. 1978), *cert. denied*, 439 U.S. 1476 (1979)). A trial court's decision denying a motion for severance is reviewed for abuse of discretion. *Mabry*, 809 F.2d at 682 (citing *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974)).

In *Zafiro v. United States*, the Supreme Court recognized the "preference in the federal system for joint trials of defendants who are indicted together." 506 U.S. 534, 537 (1993). Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209, (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* at 210. Consequently, the Supreme Court has approved joint trials many times. *Id.*; *see also Opper v. United States*, 348 U.S. 84, 95 (1954).

The decisions by our Circuit likewise recognize this preference. *See United States v. Peveto*, 881 F.2d 844, 856 n.16 (10th Cir. 1989) (courts generally adhere to the principle that "those indicted together, especially co-conspirators, should be tried together" (quoting 24 J.W. Moore et al., *Moore's Federal Practice – Criminal Procedure* § 614.05 (3d ed. 2010)); *United States v. Jenkins*, 904 F.2d 549, 556–57 (10th Cir. 1990) (persons jointly indicted should be tried together).

---

[1] The Tenth Circuit recognized that *Mabry* had been overruled on other grounds in *United States v. Magleby*, 420 F.3d 1136, 1145 (10th Cir. 2005).

**Analysis**

Mr. Lewis's initial motion (Doc. 80) makes two arguments.

First, Mr. Lewis argues that a joint trial in this case would present a *Bruton* problem. *See Bruton v. United States*, 391 U.S. 123, 136–37 (1968). He bases this argument on the idea that two of his co-defendants—Albert Brown and Maurice Bluett—purportedly gave confessions to law enforcement agents after their arrests. Also, Mr. Lewis's motion assumes, their confessions implicated Mr. Lewis and, possibly, Mr. Bush. Should the government admit those confessions during a joint trial of Mr. Lewis and his lone remaining co-defendant, and if Messrs. Brown and Bluett were not subject to cross-examination, a joint trial would present a confrontation clause problem. *See id.*; *see also United States v. Verduzco-Martinez*, 186 F.3d 1208, 1212-13 (10th Cir. 1999).

A good deal has transpired, however, since Mr. Lewis filed his motion back in January of this year. Both Mr. Brown and Mr. Bluett have pleaded guilty to the conspiracy charge in Count I, a charge that also accuses Mr. Lewis of participating in the same conspiracy. As Mr. Lewis has acknowledged, the two guilty pleas largely eliminated Mr. Brown and Mr. Bluett's capacity to assert a Fifth Amendment privilege. *See* Doc. 148 at 89. In sum, a critical assumption of Mr. Lewis's *Bruton* argument is no longer viable.[2]

Next, Mr. Lewis's initial motion argues that the government's evidence would produce undue prejudice. He bases this argument on discovery reports about the heroin overdose of a person named Nathaniel Brady. According to Mr. Lewis's motion, the government "has suggested" that his co-defendant, Mr. Bush, had supplied the heroin causing Mr. Brady's death.

---

[2] And, as the government has noted, there are other ways to avoid a *Bruton* problem even if the two purported confessors were unavailable for cross-examination. For example, the government could omit any aspect of a confession that might implicate Mr. Lewis. *See Richardson*, 481 U.S. at 211.

Evidence of Mr. Brady's death—if offered at trial against Mr. Bush but not against Mr. Lewis—could produce a "spillover effect" of the kind noted in *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005). It likely would require the court to engage in the close evaluation outlined in *Zafiro*, 506 U.S. at 539. But the court need not apply that analysis here. The government's original Response asserts that it is not planning to offer evidence about Mr. Brady's death at trial. Doc. 157 at 2. This representation obviates Mr. Lewis's concern because, without the evidence, there is no harm to spill over onto the case against Mr. Lewis. The court thus rejects the *Zafiro*-based argument made by Mr. Lewis's motion.

To be fair, however, the government's statement of intention is qualified, described as its intention "at this time." If the government shifts its plans, that change could produce a real dilemma for management and planning of the trial. Given the importance of the government's representation to the court's conclusion but recognizing the qualifier appended to it, the court now imposes a new disclosure deadline on the United States: **The government must inform defendants' counsel and the court—before the *James* hearing on September 6, 2019—if it intends to offer evidence of Mr. Brady's death. Requiring this disclosure before trial is essential because, without it, Mr. Lewis cannot renew his motion (if he desires to do so), and the court cannot conduct the requisite analysis**.

Mr. Lewis's Supplemental Motion (Doc. 151) makes two new arguments. The court now turns to those two arguments.

First, under a heading labelled "Issue #1," Mr. Lewis invites the court to delay its ruling on the severance motion until the *James* hearing on September 6, 2019. Doc. 151 at 3. This request relies on his new challenge to the government's decision to join the charges against Mr. Lewis in the same Indictment with the charges against Mr. Bush. *See* Doc. 151 at 2 (challenging

"whether the joinder of his charges with codefendant Bush was appropriate from the outset"). He contends that the evidence to be presented at the *James* hearing on September 6, 2019, will "bring into focus the parameters of the conspiracy and evidence applicable to" Mr. Lewis. *Id.* at 3. This evidence, he appears to argue, will illuminate the evidence more fully and consequently could supplement the basis for his severance motion.

Fed. R. Crim. P. 8(b) outlines the standard governing this argument. It provides, "The indictment . . . may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." *Id.* The Tenth Circuit has explained how district courts must apply Rule 8: "Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Price*, 265 F.3d 1097, 1105 (10th Cir. 2001), *overruled on other grounds*, *United States v. Booker*, 543 U.S. 220 (2005). Applying this approach to the charges here, the court rejects Mr. Lewis's misjoinder argument.

As the government carefully explains in its Response (Doc. 140), the charges against Mr. Lewis easily satisfy Rule 8's standard. Count I charges that Mr. Lewis and Mr. Bush joined the same conspiracy and, for about 10 months, jointly took many overt acts designed to accomplish its objectives. *See* Doc. 140 at 3 (asserting that Mr. Lewis, Mr. Bush, and Mr. Bluett were "core members" of the alleged conspiracy), 4 (summarizing anticipated evidence that video evidence shows the three engaging in drug trafficking activity, *e.g.*, "weighing heroin, packaging heroin, and counting money" at the location where the purported conspiracy is alleged to have conducted its business), 5 (same), and 6 (Bush describes structure and relationship of conspiracy alleged by the government). Mr. McKelway's testimony at the hearing on Mr. Lewis's motion for severance demonstrated that the government has marshaled at least some evidence of the charged

5

conspiracy.  Mr. McKelway testified about the government's video evidence purportedly showing Mr. Brown and Mr. Bush participating together in drug activity, Doc. 148 at 22–23, and, according to the witness, they did so "on a regular basis." *Id.* at 23–24 ("And during those interceptions [of audio and video within the residence at 823 Parallel], we were able to see on a regular basis George Bush, Jr., Isaiah Lewis, Albert Brown, and Maurice Bluett weighing drugs, packaging drugs, cooking heroin, specifically diluting it with lactose, those type [of things and] customers coming to the house [and] purchasing heroin; George Bush, Jr., Albert Brown, Isaiah Lewis weighing those drugs prior to selling them to customers.").

Given the charges in the Indictment and the evidence previewed to date, the court concludes that the government has satisfied Rule 8's standard.  It thus rejects Mr. Lewis's argument that the Indictment improperly joined him with charges against Mr. Bush.  Also, the court respectfully declines Mr. Lewis's invitation to withhold ruling until after the *James* hearing.  That approach creates a risk that is unnecessary, *i.e.*, that the trial will begin without the court having decided an important pretrial issue.  And should the *James* hearing isolate a previously unknown reason for a severance motion, Mr. Lewis can seek leave to make such a motion out of time.  But the court is unwilling to leave a motion pending—and excluding time from the Speedy Trial Act's analysis—on the theory that something may happen at that hearing that would support severance.

This leaves Mr. Lewis's last argument, identified as "Issue #2."  Doc. 151 at 3.  This argument hypothesizes that Mr. Lewis's co-defendant, George Bush, Jr., might move to continue the trial.  Mr. Lewis then argues that the court—if Mr. Bush asks for a continuance—should sever the case against Mr. Lewis and permit Mr. Lewis's trial to proceed, as scheduled.  The court already has conducted an extensive Speedy Trial Act analysis.  *See* Doc. 108.  Once again,

the court declines to decide issues based on what might happen.  If Mr. Bush moves to continue the trial, the court will hear from Mr. Lewis then.  Until then, the court declines to issue advisory opinions addressing abstract propositions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Isaiah Lewis's Motion for Severance and Separate Trial (Doc. 80) and his Supplemental Motion for Severance and Separate Trial (Doc. 151) are denied.

**IT IS FURTHER ORDERED THAT** the government, if it plans to seek to admit evidence of Mr. Brady's heroin overdose during the trial of this case, must notify counsel of record and the court no later than the *James* hearing on September 6, 2019.

**IT IS SO ORDERED.**

**Dated this 7th day of August, 2019, at Kansas City, Kansas.**

>> **s/ Daniel D. Crabtree**
>> **Daniel D. Crabtree**
>> **United States District Judge**